UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JOHN M. RUIZ SR., ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 2:14-CV-69-JEM |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
|     Defendant. ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by John M. Ruiz Sr. on March 3, 2014, and Brief in Support of Plaintiff's Motion for Summary Judgment [DE 18], filed by Plaintiff on September 16, 2014. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On February 5, 2015, the Commissioner filed a response, and on February 19, 2015, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

**PROCEDURAL BACKGROUND**

On September 15, 2011, Plaintiff filed an application for disability insurance benefits with the U.S. Social Security Administration alleging that he became disabled on July 24, 2011. Plaintiff's application was denied initially and upon reconsideration. On June 21, 2013, Administrative Law Judge ("ALJ") Henry Kramzyk held a hearing at which Plaintiff, represented by non-attorney Nora Cruz, and a Vocational Expert ("VE") testified. On September 4, 2013, the ALJ issued a decision finding Plaintiff not disabled. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on January 3, 2014. *See* 20 C.F.R. § 404.981. The ALJ made the following findings under the required five-step analysis:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2011.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of July 24, 2011, through his date last insured of March 31, 2012.

3. Through the date last insured, the claimant had the following severe impairments: obesity, diabetes mellitus, meniscal tear and degenerative changes of the right knee status-post right knee surgery, degenerative changes in the lumbar spine, diverticulitis of the colon, dysthymia, and obsessive compulsive disorder.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

5. After careful consideration of the entire record, the ALJ found that, through the date last insured, the claimant had the residual functional capacity to lift, carry, push or pull up to 10 pounds occasionally, lesser weights more frequently, stand and/or walk about 2 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday with normal breaks. The claimant must never climb ladders, ropes, or scaffolds, kneel, or crawl, but he can occasionally climb ramps and stairs, balance, stoop, or crouch. He is able to sustain attention and concentration for 2-hour periods at a time and for 8-hours in the workday on short, simple, repetitive instructions. He can use judgment in making work decisions related to short, simple, repetitive instructions. The claimant requires an occupation with only occasional co-worker contact and supervision, one with a set routine and procedures, few changes during the workday, and an occupation with only superficial contact with the public on routine matters. He cannot perform fast-paced production work. However, he can maintain regular attendance and be punctual within customary tolerances, and perform activities within a schedule. Finally the claimant must avoid concentrated exposure to wetness including wet slippery uneven surfaces and avoid concentrated exposures to hazards such as unprotected heights and dangerous machinery.

6. Through the last date insured, the claimant was unable to perform any past relevant work.

7. The claimant was born on September 9, 1966, and was 45 years old, which is defined as a younger individual age 18-44, on the date last insured. The claimant subsequently changed age category to a younger individual 45-49.

8. The claimant has a limited education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from July 24, 2011, the alleged onset date, through March 31, 2012, the date last insured.

Under 42 U.S.C. § 405(g), Plaintiff initiated this civil action for judicial review of the Commissioner's final decision. The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTS

Plaintiff was 45 years old the alleged onset date. Plaintiff suffers from severe impairments of obesity, diabetes mellitus, meniscal tear and degenerative changes of the right knee status-post right knee surgery, degenerative changes in the lumbar spine, diverticulitis of the colon, dysthymia, and obsessive compulsive disorder. Plaintiff sought treatment with Dr. Patel since 2010, which included complaints of abdominal pain, constipation, lower back pain and knee pain. Plaintiff had knee surgery in March 2012. State consultant physician Dr. Sands conducted an RFC assessment that limited Plaintiff to light exertional work with further postural limitations, which was affirmed by state agency physician Dr. Brill. Plaintiff also suffers from non-severe impairment of hypertension. State consultant psychologist Dr. Singh diagnosed Plaintiff with OCD and dysthymic disorder.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "A reversal and remand may be required, however, if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citations omitted).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the

reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, the claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f); 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry

5

to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functioning capacity ("RFC"), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [claimant's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

**A.     Credibility**

Plaintiff argues that the ALJ's credibility analysis was not proper and used impermissible boilerplate language. The Commissioner argues that the ALJ properly assessed Plaintiff's credibility.

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication . . . ;
> (v) Treatment . . . for relief of [] pain or other symptoms;
> (vi) Any measures . . . used to relieve []pain or other symptoms . . . ; and
> (vii) Other factors concerning [] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). In making a credibility determination, Social Security Ruling 96–7p require the ALJ to consider the record as a whole, including objective medical evidence, the claimant's statement about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant, and any other relevant evidence. *See* SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996). An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he or she is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on her ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p at *6. An ALJ's credibility determination is entitled to substantial

7

deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong." *Prochaska*, 454 F.3d at 738.

Plaintiff argues that the ALJ used impermissible boilerplate language in determining his credibility. The ALJ stated that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the above residual functional capacity assessment." AR 32. If the sentence cited by Plaintiff encompassed the totality of the credibility finding in the ALJ's decision, it would be improper. *See Bjornson v. Astrue*, 671 F.3d 640, 645, 647 (7th Cir. 2012); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010)."However, the simple fact that an ALJ used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if he otherwise points to information that justifies his credibility determination." *Pepper v. Colvin*, 712 F.3d 351, 367-68 (7th Cir. 2013). In this case the ALJ did specifically list certain issues he said "call into question the credibility of the claimant's subjective allegations of disability." AR 33. The use of the boilerplate language, standing alone, is not sufficient to warrant remand where the ALJ has otherwise conducted a credibility determination, as he did here. *See Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012) ("If the ALJ has otherwise explained his conclusion adequately, the inclusion of this [boilerplate] language can be harmless."); *Richison v. Astrue*, 462 F. App'x 622, 625 (7th Cir. 2012) ("We have derided this sort of boilerplate as inadequate, by itself, to support a credibility finding"); *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) ("The ALJ declared this testimony 'not entirely credible,' but we have said already that this *unexplained* finding is unsustainable.") (emphasis added).

Although the ALJ did provide a basis for his credibility findings, the Court is concerned by the credibility analysis. The ALJ, for example, found Plaintiff less than credible because of "a

8

significant history of non-compliance with medical treatment." AR 33. The ALJ did not specify the instances of Plaintiff's non-compliance, but noted that Plaintiff's doctor instructed him to go to a hospital because of his knee pain, and that when Plaintiff went to the hospital the next day, "instead of focusing on his knee pain, the claimant instead reported significant abdominal pain, which was the primary concern in the ER records." AR 29. The ALJ also noted that Plaintiff did not return to his doctor regarding the knee pain "for some two months" and that Plaintiff did not go to the hospital another time have a recommendation from his doctor.

The Court is not convinced that these two instances demonstrate a "significant history of non-compliance" where Plaintiff had an intervening ER trip with an overnight stay and continued to follow-up with his treating physician. To the extent that the ALJ considered this to be non-compliance, he erred in failing to inquire into the reasons Plaintiff failed to seek care. The ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide" and "may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner." SSR 96-7p, at *7; *see also Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("[A]n ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference . . . The claimant's 'good reason' may include an inability to afford treatment, ineffectiveness of further treatment, or intolerable side effects ); *Craft*, 539 F.3d at 679 ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure [to follow a treatment plan] unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting SSR 96-7p).

The ALJ also noted that "also missing were any references to knee surgery," but two paragraphs later stated "[a]s directed, the claimant underwent right knee arthrosporic surgery" and then faulted Plaintiff for doing it four months after he originally said he was going to have it done. AR 31. The ALJ also stated "[t]here is no discussion of a use of a cane in the records," but again, two paragraphs later, stated "[p]ost-surgical notes discuss the claimant walking with a cane immediately after surgery." AR 31. The ALJ also stated that "despite" Plaintiff's claims "[h]e admitted that he continues with his daily routine of medication administration and breakfast preparation" as if either were lofty endeavors. The Court is also concerned by the ALJ's mention of Plaintiff's records that indicate he "admitted to 'multiple sexual partners, does not use a condom, wants test for HIV and gonorrhea, chlamydia, syphilis, and herpes,' this, in spite of his allegations of social phobia and other mental allegations." The ALJ appears to question Plaintiff's mental health diagnosis because of his on his own assumptions of mental illness, even after giving "great weight" to a state psychological opinion diagnosed the claimant with OCD and dysthymic disorder.

Based on the issues in the ALJ's credibility analysis, the Court remands this case for the ALJ to conduct a new credibility analysis in compliance with the applicable rules and regulations.

**B.      Residual Functional Capacity**

Plaintiff argues that the ALJ failed to provide a proper basis for Plaintiff's RFC. The Commissioner argues that the RFC is supported by substantial evidence and the ALJ has adequately explained his findings.

"The RFC is an assessment of what work-related activities the claimant can perform despite [his] limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. § 404.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of

the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. § 404.1545(a)(3). According to SSA regulations:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p at *7. Although an ALJ is not required to discuss every piece of evidence, he must consider all of the evidence that is relevant to the disability determination and provide enough analysis in his decision to permit meaningful judicial review. *Clifford*, 227 F.3d at 870; *Young*, 362 F.3d at 1002. In other words, the ALJ must build an "accurate and logical bridge from the evidence to his conclusion." *Scott*, 297 F.3d at 595 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

The ALJ gave "little weight" to the state agency physician's opinion that set forth an RFC for Plaintiff and that was re-affirmed by another state agency physician,. The ALJ rejected these opinions "based on a review of the totality of the evidence, including records received at the hearing level." AR 33. The ALJ noted that these opinions limited Plaintiff only to light exertional work but found that the combination of Plaintiff's "physically severe impairments limit his exertional ability to that of sedentary level" and that Plaintiff "would require greater postural limitations in light of his recent surgical history." In this case, the ALJ did a commendable job considering additional records and

recent surgeries to realize that the previously found limits may not be accurate or may have changed. However, he gave no weight to any other medical report that discussed Plaintiff's functional limitations.

While the ALJ's limitations were more restrictive than the state agency doctors, the Court is concerned that the ALJ made medical determination as to what he believes the physical limitations would be from such medical evidence. *See Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010) ("[I]t is the evidentiary deficit left by the ALJ's rejection of his reports—not the decision itself—that is troubling.") The ALJ, for instance, noted that the MRI image of Plaintiff's right knee and Plaintiff's lumbar spine confirmed certain damage and "[b]ased on those conclusive radiographic images, [he] has incorporated reasonable limitations in the claimant's physical exertional activities to that of a sedentary level with no kneeling or crawling." AR 29. The ALJ did not explain how he determined that these limitations are reasonable and no medical expert including them in any report. The Seventh Circuit has repeatedly held that ALJs are not to make their own independent medical findings. *See, e.g., Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009); *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). ALJs have been warned not to "succumb to the temptation to play doctor" because "lay intuitions about medical phenomena are often wrong." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (citing cases).

When an ALJ denies benefits, he must build an "accurate and logical bridge from the evidence to [his] conclusion," *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir.2000), and he is not allowed to "play doctor" by using his own lay opinions to fill evidentiary gaps in the record. *See Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir.2003). Accordingly, since the Court is remanding this case for other matters, a new determination of Plaintiff's RFC should be completed. The Court reminds the

ALJ of his duty to fully develop the record, including recontacting physicians for clarification, such as enquiring into the limitations resulting from Plaintiff's impairments as necessary. *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004); S.S.R. 96-5p; *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014).

### C. Obesity

Plaintiff argues that the ALJ did not properly consider obesity in at Step Three or in combination with Plaintiff's other impairments. The Commissioner argues that the ALJ properly considered obesity in Step Three and in combination.

The ALJ did not clearly explain his consideration of obesity, if at all, at Step Three. At Step Three of the disability inquiry, an ALJ must determine whether the claimant's impairments meet or equal the criteria of an impairment listed in the appendix to the social security regulations. *See* 20 C.F.R. § 404.1520(a)(4)(iii). An individual suffering from an impairment that meets or is the equivalent of the description of a listing is conclusively presumed disabled, and no further analysis is required. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "To meet or equal a listed impairment, the claimant must satisfy all of the criteria of the listed impairment," and he "bears the burden of proving his condition meets or equals a listed impairment." *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999).

Under the Commissioner's regulations, an ALJ "will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing. For example, obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing." SSR 02-1p, 2002 WL 34686281, at *5. In this case, the ALJ referenced listings 1.02 and 1.04, among others. Listing 1.02 addresses

major dysfunction of a joint and listing 1.04 addresses spine disorders, both which could be impacted by obesity. *See*, *e.g.*, SSR 02-1p, 2002 WL 34686281, at *5 ("[Obesity] may substitute for the major dysfunction of a joint(s) due to any cause (and its associated criteria), with the involvement of one major peripheral weight-bearing joint in listings 1.02A or 101.02A . . .").

The ALJ noted Listings 1.02 and 1.04, and laid out the text of the requirements, but did not conduct any analysis of Plaintiff's conditions, much less the impact obesity might have on whether he met the listings. "In reviewing Step Three determinations, an ALJ should mention by name the specific listings he is considering; his failure to do so, if combined with a 'perfunctory analysis' requires remand." *Mogg v. Barnhart*, 199 F. App'x 572, 575 (7th Cir. 2006). The ALJ did not explain his reasoning as to why Plaintiff did not meet the listing, especially in light of the impact Plaintiff's obesity might have on the listings analysis.

ALJs are also required to consider impact of claimant's impairments in combination. "Although these impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether. Moreover, . . . an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might be disabling."); *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) ("[A]n ALJ is required to consider the aggregate effects of a claimant's impairments, including impairments that, in isolation, are not severe.") (citing 20 C.F.R. § 404.1523; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)). In addition, "Social Security Ruling 02-1p requires an ALJ to consider the exacerbating effects of a claimant's obesity on his underlying conditions (even

if the obesity is not itself a severe impairment) when arriving at a claimant's RFC." *Hernandez v. Astrue*, 277 F. App'x 617, 623-24 (7th Cir. 2008) (citing SSR 02-1p, 2002 WL34686281 (Sept. 12, 2002)) (other citations omitted); *see also Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005) (finding that, even if obesity is not a severe impairment itself and "merely aggravates a disability caused by something else[,] it still must be considered for its incremental effect on the disability").

In this case, the ALJ concluded that Plaintiff's obesity was a severe impairment, making it especially important that he consider the limitations caused by the combination. While the ALJ stated that he considered "claimant's obesity . . . in relation to the musculoskeletal, respiratory, and cardiovascular body systems," which quotes the language of the regulation, he did not address how obesity impacts Plaintiff's severe and non-severe impairments. *See* SSR 02-1p, 2002 WL 34686281, at *5 ("For example, obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments."). Nor is it apparent to the Court that the ALJ considered the combination of Plaintiff's other impairments. The combination of Plaintiff's severe and non-severe impairments, even without considering their exacerbation by obesity, could change the ALJ's finding that Plaintiff can stand and/or walk two hours in an eight hour workday or even sit about six hours in an eight hour work day. The Court is unable to determine whether the ALJ considered these impairments in combination and, if he did, how such consideration was reflected in the ALJ's RFC. Accordingly, the Court remands for the ALJ to build a logical bridge from the evidence to his conclusions in the RFC.

On remand, the ALJ is directed to consider the combination of Plaintiff's impairments, even those that are not severe in isolation, and to specifically address the impact his obesity has on his

ability to perform work and on the listing analysis.

**D.    Vocational Expert Testimony**

Plaintiff argues that the Commissioner did not meet her burden to provide sufficient evidence that a number of jobs exist in the economy that Plaintiff could perform. The Court is remanding the case for the reasons above and will not reach the arguments on the VE testimony. On remand, the Court reminds the ALJ to elicit clear testimony from the VE under the applicable regulations.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in the Brief in Support of Plaintiff's Motion for Summary Judgment [DE 18], and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 17th day of September, 2015.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:  All counsel of record